AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT AND ARREST WARRANT

I, Jason Taylor, duly sworn, depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI"). I have been employed by the FBI since 2019. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a criminal complaint and arrest warrant. I am also an investigative or law enforcement officer of the United States, within the meaning of Section 2510(7) of Title 18, United States Code: that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Section 2516, Title 18, United States Code.

2. I am currently assigned to the Boston Division of the FBI, where I work on investigations relating to Violent Crime. Previously, I was assigned to the Metro-Boston Gang Task Force which investigated distribution of narcotics, firearm offenses, and associated gang-related violent crimes. In the course of these investigations, I have been the affiant on search warrant applications, and I have participated in surveillance, in the covert purchase of illegal drugs and firearms, and in the execution of search warrants of cellular phones, businesses, e-mail accounts, and persons for evidence relevant to ongoing criminal investigations.

3. I am currently investigating Lewis FLOYD ("FLOYD") (DOB XX/XX/1985), for violations of federal law, including 18 U.S.C. § 2261A, the federal cyberstalking statute ("the Target Offense"), and 18 U.S.C. § 2265, which provides enhanced penalties for violation of § 2261A by offenders previously convicted of a domestic violence or stalking offense. I submit this affidavit in support of an arrest warrant and criminal complaint charging FLOYD with a

violation of 18 U.S.C. § 2261A.

4.      The facts in this affidavit come from my personal observations and review of records, my training and experience, and information obtained from other law enforcement and witnesses. This affidavit is intended to show merely that there is probable cause for the requested complaint and does not set forth all of my knowledge about this matter.

## STATEMENT OF PROBABLE CAUSE

5.      VICTIM 1[1] is a Bristol County Assistant District Attorney who prosecuted FLOYD for Extortion by Threat of Injury in May 2022.  This affidavit is filed in connection with threatening, harassing, and intimidating conduct FLOYD has engaged in against VICTIM 1 arising from that prosecution.  That prosecution is therefore summarized below.

*The 2018 Threats to the Children's Advocacy Center*

6.      In 2018, FLOYD engaged in a pattern of threatening conduct that led to his conviction by a jury for Extortion by Threat of Injury in Bristol County Superior Court.  *See* Dkt. 1873CR00440.  FLOYD was indicted on the matter in Bristol County Superior Court on November 29, 2018.   He was arraigned on January 25, 2019, and initially held as a danger pursuant to M.G.L. c. 276, Sec. 58A.

7.      That conviction was affirmed by the Massachusetts Appeals Court on July 3, 2024. *See Commonwealth v. Floyd*, 104 Mass. App. Ct. 1112 (July 3, 2024).  The facts adduced at trial underlying the conviction were summarized by the Appeals Court as follows:

   a.      On July 18, 2018, FLOYD travelled to Tiverton, Rhode Island, to confront the mother of his son and demanded to see that child.  The child's mother denied

---

[1] VICTIM 1 is known to law enforcement.  His identity is redacted herein for privacy and safety concerns.

2

FLOYD's demand.

  b.  The next day, FLOYD called the Children's Advocacy Center of Bristol County ("CAC") nineteen times between 8:46 A.M. and 11:38 A.M.[2]

  c.  In those calls, FLOYD referred to the women he spoke with as "bitches" and stated that he was going to go back to Tiverton, to the family's home, and "tie up the parents and make the bastard children watch while he puts two in the back of the head." Attempts to deescalate were unsuccessful, and FLOYD made several more calls during which he threatened CAC employees, including with dismemberment.

  d.  For example, FLOYD told a CAC employee that if the CAC "didn't do what he wanted … by three or 4:00 P.M.," he would come to the CAC with others and "light the place up and shoot into the building." He said: "I know there's females there, and females need to fear me. They need to feel fear in their heart because women ruin this world, women's rights ruin this world, and women need to fear me." This conduct resulted in police responding to the CAC.[3]

*FLOYD's Release, Attempt to Flee, and Renewed Detention*

8.  While the case was pending, due to the COVID-19 pandemic, and over the Commonwealth's objection, FLOYD was released on conditions (including GPS monitoring) on December 29, 2020. *See* No. 214, Dkt. 1873CR00440.

9.  Six months later, on June 17, 2021, a warrant was issued for FLOYD's arrest due

---

[2] FLOYD had previously contacted the Rhode Island Children's Advocacy Center. He was issued a no-trespass order thereafter.

[3] On appeal, FLOYD conceded the sufficiency of evidence to establish the first three elements of M.G.L. c. 295, Sec. 25, to wit: (1) a malicious threat, (2) made to a named person, (3) to injure someone's person or property.

to issues with his GPS monitoring. FLOYD made several threatening statements to the probation department around this time. After the warrant was issued, according to Fall River Incident Reports, FLOYD threatened (among other things) that "if any police from any agency attempt to arrest me I will make sure they have to shoot me and kill me on the spot."

10. Per the reports, Fall River Police located FLOYD getting in his vehicle in the early hours of June 18, 2021. Officers attempted to stop and apprehend FLOYD, but he fled in his vehicle at a high rate of speed and drove into Rhode Island. Fall River Police spoke with FLOYD by phone while he drove; according to the report, FLOYD stated "I'm not going back to jail, I'd rather die."

11. Later that morning, the Tiverton Police Department in Rhode Island encountered FLOYD just before 3:00 am on June 18, 2021. According to a Tiverton Police Incident Report, FLOYD swerved into oncoming traffic in a manner that appeared intentionally designed to collide with an oncoming police car; when police pursued him, he accelerated and again swerved into the path of an oncoming tractor-trailer, which narrowly avoided hitting him.

12. FLOYD was later located and arrested that same day (June 18, 2021) by Sudbury, MA Police. His car had been abandoned, and he had cut off his GPS bracelet. According to a Sudbury Police Arrest Report, after his arrest, FLOYD stated to the effect that he would do "everything in his power" so that that the police "would put a bullet in his head."

13. For fleeing the Fall River police, FLOYD was charged and pleaded guilty to negligently operating a motor vehicle and was sentenced to 6 months in the House of Correction. *See* Dkt. 2132CR001686. For his conduct during the police chase in Rhode Island on June 18, 2021, FLOYD was charged and is subject to an active warrant for Eluding the Police.

14. FLOYD went to trial in Bristol County Superior Court for Extortion by Threat of

4

Injury in May 2022. *See* Dkt. 1873CR00440. He represented himself. The case was prosecuted by Assistant District Attorney VICTIM 1. He was convicted by a jury on May 13, 2022, and sentenced to two-four years in state prison with credit for time served, minus the six-month sentence for negligent operation described above. According to VICTIM 1, during trial FLOYD made frequent derogatory and false statements about VICTIM 1 and law enforcement witnesses who investigated the case.

*The Target Offense: 2025 Harassment, Intimidation, and Threats to Victim 1*

15. After his conviction and release, FLOYD commenced threatening behavior towards VICTIM 1 and other members of law enforcement in connection with his trial and conviction.

16. Specifically, according to a Fall River incident report and witnesses who I have interviewed, on August 11, 2025, FLOYD called the Fall River police and left a voicemail laced with profanity complaining about members of the Fall River police who investigated his threats against the CAC, *i.e.*, the conduct underlying his 2022 conviction for Extortion by Threat of Injury described by the Massachusetts Appeals Court as recounted above.

17. The following month, on September 25, 2025, an anonymous person claiming to be an attorney called the Fall River police to report that FLOYD had told her that he was "on his way to Fall River to take out DAs," specifically, VICTIM 1. The caller said that FLOYD had further identified by name other officers with the Fall River police department who had investigated FLOYD and claimed to have their home addresses.

18. On September 25, at 4:16 P.M., VICTIM 1 received a call on his iPhone from an unknown number. VICTIM 1 answered the phone and recognized FLOYD's voice, with which he was familiar due to the extensive prior interactions with FLOYD. FLOYD threatened to kill

5

VICTIM 1 and VICTIM 1's family, specifically his mother. FLOYD stated he would find where VICTIM 1's mother went to church and shopped for groceries. He further threatened to release VICTIM 1's cell phone and address on the internet, *i.e.*, to "doxx" him, and to make known VICTIM 1's address to everyone he has ever prosecuted. He told VICTIM 1 that VICTIM 1 "would feel the same pain he feels." This call lasted 36 seconds.

19. On September 25, at 4:25 P.M., VICTIM 1 received three text messages from a phone number ending in -6585. This number is known to law enforcement and is known to be FLOYD's, including because it was the number FLOYD used to previously contact the Fall River police department and because it was the same number FLOYD listed as his own in other court proceedings. I have reviewed these messages.

   a. The first text stated: "This goes public in moments imma have your inbox flooded bitch ass."

   b. The second text stated: "I warned you not to make me come back and u did it u fucking faggot."

   c. The third text was a screen shot from an internet page that listed VICTIM 1's true current address, several past addresses, and true current cell phone number.

20. On September 25, at 4:58 P.M., VICTIM 1 received a phone call from the -6585 number. VICTIM 1 answered and again heard FLOYD'S voice. VICTIM 1 described FLOYD'S voice as enraged and unnerving. He accused VICTIM 1 of contacting FLOYD's ex-wife, which VICTIM 1 had not done. He again threated to doxx VICTIM 1. He again repeated his threats to kill VICTIM 1 and, specifically, VICTIM 1's mother, correctly identifying her true name and true address. He threatened to either kill the mother himself or hire others to do so—per FLOYD, "it wouldn't be just street n****** or gang members that would come and kill," but

rather "white, swastika tattooed gang members." FLOYD repeatedly called VICTIM 1 a "faggot" and stated the only way to stop FLOYD from carrying out the threats would be to publicly announce that FLOYD was "right" about the 2022 trial and that prosecutors had fabricated evidence against him. FLOYD also made threatening statements about law enforcement witnesses from his 2022 trial, specifically stating that he liked watching a female law enforcement officer "squirm" during his *pro se* cross examination. Finally, FLOYD threatened further harm against VICTIM 1 if anything happened to him as a result of FLOYD's calls that day. The call lasted 19 minutes.

21. On September 25, 2025, due to nature of FLOYD's ongoing harassment, intimidation, and threats, law enforcement obtained location records from T-Mobile for the -6585 number to determine FLOYD'S whereabouts from September 24 to September 25, 2025. Law enforcement used this information to find and arrest FLOYD on September 25, 2025, near South Station in Boston, MA. I have reviewed those records, which reveal that FLOYD traveled from Portland, Oregon to Boston overnight between September 24 and 25; he then traveled to Rhode Island and back to Boston on September 25.[4] This travel is consistent with FLOYD'S statement that he was "on his way" to Boston to harm VICTIM 1.[5] The -6585 number was active during the time of each threat to VICTIM 1.

22. Law enforcement seized one device from FLOYD during his arrest, specifically a

---

[4] According to court documents filed by FLOYD in New Bedford District Court in an open criminal matter described below, FLOYD lived in Portland, Oregan at least as of May 2025. *See* Dkt. 2433CR004100.

[5] According to VICTIM 1 and a review of the Bristol County Superior Court docket, on September 3, 2025, FLOYD filed a motion for a new trial with respect to his conviction for threatening the Children's Advocacy Center. On September 22, 2025, FLOYD was notified by email that a hearing on that motion would be heard October 16, 2025, and that FLOYD could appear via Zoom. That hearing is now scheduled for December 22, 2025.

7

Motorola cell phone. That device is assigned the -6585 number.

23. During his arrest, FLOYD made spontaneous inculpatory statements to law enforcement, specifically that he "wasn't really gonna do anything."

24. FLOYD was charged in Fall River District Court, including for witness intimidation, stalking, and threats, and is presently in pretrial detention on dangerousness grounds. *See* Dkt. 2532CR003714.

*FLOYD's Related Prior Conduct*

25. United States Code Title 18, Section § 2265A, enhances the potential penalty under 18 U.S.C. § 2261A(2) for persons previously convicted of a prior domestic violence or stalking offense. A charge under 18 U.S.C. § 2261A(2) requires the charged conduct to have placed VICTIM 1 in reasonable fear of death or seriously bodily injury to himself or his immediate family, or to reasonably be expected to cause substantial emotional distress to VICTIM 1.

26. Due to VICTIM 1's prior interactions and prosecution of FLOYD, he was aware as of September 25, 2025, of FLOYD's past threats and criminal history. That history is summarized in the following paragraphs.

27. First, according to FLOYD's Massachusetts Board of Probation records, at least five different plaintiffs have obtained abuse or harassment prevention orders against FLOYD since 2008. Two were active at the time of FLOYD's September 25 threats to VICTIM 1. On September 29, 2025, FLOYD was arraigned on one charge of violating one of these abuse prevention orders. *See* Dkt. 2532CR003640 (Fall River Dist. Ct.).

28. Second, in addition to the Rhode Island warrant for Eluding the Police described above, FLOYD is subject to an arrest warrant out of Barrington, Rhode Island, for Cyberstalking.

8

According to the underlying Barrington Police Incident Report, in September 2025, a guidance counselor at Tiverton Middle School reported to police that she and others at the school have been receiving threatening phone calls from FLOYD since 2022. Further, on September 4, 2025, the guidance counselor's husband separately received a voicemail from FLOYD stating that "his wife messed with the wrong man's child," appeared to reference his address, and threatened to make his "life miserable."

29.     Third, on November 4, 2024, FLOYD was charged with Assault and Battery in an open case pending in the New Bedford District Court. *See* Dkt. 2433CR004100. According to the underlying police report, on November 4, 2024, FLOYD allegedly assaulted and beat his roommate at a sober home.

30.     Fourth, on March 28, 2017, FLOYD was charged with Threat to Commit A Crime in Fall River District Court. *See* Dkt. 1732CR001518. FLOYD pleaded guilty on October 3, 2017, and was given a suspended sentence. FLOYD was on probation in this matter at the time he made the threats to the CAC that resulted in his Superior Court conviction, described above. According to the underlying police report, FLOYD wrote several threatening text messages to his landlord, to include:

    a.     "Same way you had Gino stalking my apartment I'll do the same to you your wife and kids u fat fuck."

    b.     "I'm going to punch your stupid fat fucking face in when I see u court or no court."

    c.     "Maybe I'll beat tf outta u in front of your kids at church u fat bitch."

    d.     "I swear on everything unholy [redacted victim name] that you and your stupid ass brother in law will be seeing me."

31. Fifth, also on March 28, 2017, FLOYD was charged with a separate Threat to Commit a Crime in Fall River District Court. *See* Dkt. 1732CR001532. FLOYD pleaded guilty on October 3, 2017, and was given a suspended sentence. According to the underlying police report, on or around December 18, 2016, FLOYD made several threats to a coworker, include threats to "shoot him."

32. Sixth, on January 3, 2017, FLOYD was arraigned in Fall River District Court on charges including Assault, Threat to Commit a Crime, and Witness Intimidation. *See* Dkt. 1732CR000025. FLOYD pleaded guilty to the assault, threats, and intimidation charges on February 1, 2017, and received a sentence of probation. According to the underlying police report, on December 29, 2016, FLOYD threatened court officers at the Housing Clerk's Office in Bristol County, refused lawful orders, and issued direct violent statements including that he would return at 5:00 p.m. to "fuck [them] up" and that he would "shoot everyone." When informed he was under arrest, FLOYD fled the courthouse while continuing to threaten to return.

33. Seventh, on August 24, 2009, FLOYD was arraigned in Fall River District Court on charges including Rape of a Child With Force and Threat to Commmit a Crime. *See* Dkt. 0932CR005054. The rape charge was later amended to Assault and Battery. On December 3, 2009, FLOYD admitted to sufficient facts for both the Assault and Battery and Threats charges. For the Assault and Battery, he was sentenced to two and half years in the House of Corrections. He received probation for the Threats charge. According to the underlying police report, a fifteen-year-old girl reported to family and then police that FLOYD (then twenty-four years old) had sex with her, over her protests, while she was intoxicated, and afterward threatened the victim with violence and death.

34. Eighth, on October 16, 2008, FLOYD was arraigned in Fall River District Court

10

for Stalking, which was later amended to Threat to Commit a Crime. *See* Dkt. 0832CR007685. According to the online docket, FLOYD admitted to sufficient facts with respect to making a threat on April 2, 2009. According to the underlying police report, FLOYD made repeated calls to the grandmother and another family member of an incarcerated ex-girlfriend, wherein he threatened: "I'm not going to rest until I kill everyone in your family."

35. Ninth, also on October 16, 2008, FLOYD was arraigned in Fall River District Court for Assault and Battery and Threat to Commit a Crime. *See* Dkt. 0832CR007688. According to the docket, FLOYD admitted to sufficient facts with respect to both assault and battery and making a threat on April 2, 2009. That disposition was converted to a guilty finding on December 3, 2009. According to the underlying police report, FLOYD made repeated threats to kill two victims after being ordered to leave their residence and later confronted one victim on the street where he spat in her face, punched her, scratched her chest, and threatened to kill her.

36. Tenth, on September 17, 2008, FLOYD was arraigned in Fall River District Court for Disorderly Conduct, Disturbing the Peace, and Attempt to Commit a Crime, which was later amended to Malicious Destruction of Property. *See* Dkt. 0832CR007228. According to the online docket, FLOYD admitted to sufficient facts with respect to all three charges on April 2, 2009. That disposition was converted to a guilty finding on December 3, 2009. According to the underlying police report, in September 2008, FLOYD became enraged after being asked by a stepfather to leave a "salon" where he was living, threated to "get" the stepfather in front of police (requiring that he be restrained), and caused property damage in that "salon."

## CONCLUSION

37. Based on the foregoing facts, I submit there is probable cause to believe that from August 11 to September 25, 2025, FLOYD, with the intent to kill, injure, harass, or intimidate,

11

used a facility of interstate commerce to engage in a course of conduct that placed VICTIM 1 in reasonable fear of death or serious bodily injury to himself and an immediate family member, or caused, or would be reasonably be expected to cause VICTIM 1 substantial emotional distress, all in violation of 18 U.S.C. § 2261A(2). I further submit there is probable cause to believe FLOYD is subject to the enhanced penalties for repeat offenders pursuant to 18 U.S.C. § 2265A, because he has previously been convicted of a domestic violence or stalking offense.

*Jason Taylor*
Jason Taylor
Special Agent
Federal Bureau of Investigation

Sworn to before me by telephone in accordance with Fed. Rule Crim. P. 4.1 this __15th__ day of December, 2025 at ~~Boston~~, MA.
                        Worcester

1:12 p.m.

Hon. David H. Hennessy
UNITED STATES MAGISTRATE JUDGE

12